# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Misty Nicole Abstance, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 9:18-109-RMG |
| vs. ) | |
| ) | |
| Nancy Berryhill, Acting Commissioner ) | |
| of Social Security Administration, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on January 14, 2019, recommending that the Court affirm the decision of the Commissioner. (Dkt. No. 18). Plaintiff filed objections to the R & R and the Commissioner filed a reply (Dkt. Nos. 19, 21). As explained more fully below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this order.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de*

*novo* determination of those portions of the R & R to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful work. If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has a "severe medically determinable physical or mental

impairment." If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment satisfies one of the designated list of impairments that would automatically render the claimant disabled. Where a claimant does not satisfy one of the listed disabling impairments, the Commissioner must proceed to Step Four, which involves a determination of the claimant's residual functional capacity ("RFC"). Once the RFC is determined, the Commissioner proceeds to Step Five to determine if jobs exist in significant numbers in the national economy that the claimant can perform in light of her RFC. 20 C.F.R. § 404.1520(a)(4). The claimant carries the burden of establishing the requirements of Steps One through Step Four, but at Step Five the burden shifts to the Commissioner. If the Commissioner fails to carry her burden at Step Five, the claimant is entitled to a finding of disability as a matter of law. *See Pearson v. Colvin*, 810 F.3d 204, 209-10 (4th Cir. 2015).

**Discussion**

The record demonstrates that Plaintiff has severe limitations on her capacity to perform full time employment due to her multiple severe mental and physical impairments. The Adminstrative Law Judge ("ALJ") determined that Plaintiff retained, just barely, the RFC to perform less than the full scope of sedentary work, the lowest possible level of function that would render a claimant in her age group non-disabled. There is no question that once she reaches 50 years of age, which is in slightly more than three years, she will be deemed disabled. In such a marginal case, the Court certainly has the duty to scrutinize the record and the controlling legal standards because the slightest legal error might tip the balance toward disability.

1. <u>The Commissioner has failed to carry her burden at Step Five
   that there exists jobs in significant numbers in the national marketplace
   Plaintiff can perform.</u>

The ALJ identified the following as Plaintiff's severe impairments: status post left knee patella fracture with open reduction and internal fixation, obesity, anxiety, depression, and adjustment disorder with anxious mood. Tr. 16. In an effort to address Plaintiff's complaints of chronic knee and hip pain, which impaired her ability to sit and stand for prolonged periods, the ALJ recognized in the claimant's RFC (1) a limitation to sedentary work; (2) a sit/stand option every hour; (3) occasional use of a cane; and (4) no use of the left foot or leg. Tr. 18. Additionally, to address Plaintiff's "mental impairments", the RFC included : (1) restriction to simple, routine, repetitive tasks; (2) instructions that she can "understand, remember, and carry out" such simple, routine, and repetitive job tasks; and (3) breaks for 15 minutes in the first half and second half of the work day and 30 minutes at midday. Tr. 18-19. In his hypothetical question to the Vocational Expert, the ALJ made it clear that the claimant "is going to be restricted to performing simple, routine, repetitive tasks; she can understand, remember, and carry out instructions related to simple, routine, repetitive job duties . . ." Tr. 61.

Despite these extensive limitations on the scope of duties Plaintiff could perform, the Vocational Expert identified three different job categories Plaintiff could perform. All involved sedentary work requiring a Reasoning Level of 2. Tr. 62-63. These included jobs as an Eye Dropper Assembler, DOT 739.687-086, 1991 WL 680194 (1991); Addresser, DOT 209.587.010, 1991 WL 671797 (1991); and Label Pinker, DOT 585.685-062, 1991 WL 684400 (1991).

A significant legal issue is raised by the Commissioner's sole reliance here on Level 2 positions to meet her burden at Step Five of the Sequential Process. The DOT identifies six

levels of jobs based upon reasoning ability. Level 1 requires the ability to "apply commonsense understanding to carry out *simple* one-or two-step instructions." Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 at * 2 (1991) (emphasis added). Level 2 positions require the ability to "apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." *Id.* (emphasis added).

Where there is an apparent unresolved conflict between the testimony of the Vocational Expert and the DOT, Social Security rules require the ALJ to (1) identify any apparent unresolved conflict between the Vocational Expert and the DOT and (2) elicit from the Vocational Expert a reasonable explanation for the conflict before relying on the vocational expert's testimony. SSR 00-04p, 2000 WL 1898704 at *2. The failure for the ALJ to perform his responsibilities under SSR 00-04p is no small matter. Since the Commissioner carries the burden at Step Five of the sequential process and Vocational Expert testimony is necessary to address a RFC inconsistent with the requirements of the DOT, the failure to resolve the conflict between the vocational expert's testimony and the DOT leaves the Commissioner without substantial evidence to meet her burden at Step Five. *See Pearson v. Colvin*, 810 F.3d at 209-10 ("[I]f the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision."). *See also Stepp v. Berryhill*, No. CV 1:17-771-MBS-SVH, 2017 WL 6806664, at *13-14 (D.S.C. Dec. 6, 2017), *report and recommendation adopted*, No. CV 1:17-0771-MBS, 2018 WL 294517 (D.S.C. Jan. 3, 2018)

The limitation of Plaintiff to "simple, routine, repetitive task[s]" due to "her mental impairments" raises a legitimate question whether her reasoning capacity is sufficient to meet Level Two demands to "apply commonsense understanding to carry out detailed but uninvolved

written or oral instructions." Additionally, the findings of the ALJ regarding limitations on Plaintiff's ability to concentrate, the need for three breaks during each work day due to mental health issues, and the explicit reference to the need for instructions "related to such tasks" that she is able to understand and remember, all raise inferences that Plaintiff suffers from significant limitations due to her "mental impairments" that may affect her reasoning level. Tr. 17-19.

SSR 00-04p does not require a definitive determination that a conflict exists between the DOT and the claimant's RFC before the ALJ is required to address the issue with the Vocational Expert. Where there is simply an "apparent conflict," the ALJ is obligated to bring this to the attention of the Vocational Expert and to obtain a reasonable explanation concerning whether the claimant can meet the responsibilities for the identified occupational positions notwithstanding her limitations.

The Commissioner responds to this issue by first arguing that the Court is prohibited from addressing this issue because it was not first raised before the Magistrate Judge. (Dkt. No. 21 at 4-6). This badly misapprehends the nature of the Social Security Act as a remedial statute in which the courts are "unusually protective" of the rights of claimants. *Pearson v. Colvin*, 810 F.3d at 210. Further, a district judge is free to "accept, in whole or in part" the recommendation of a magistrate judge and to "accept, reject or modify" any proposed order. 28 U.S.C. § 636(b)(1). This Court reviews the entire record in every Social Security case and will affirm the decision of the Commissioner only if it is supported by substantial evidence and is in accord with established legal standards. This waiver argument has been made by the Commissioner before and carries in the Social Security arena absolutely no weight, and the General Counsel's office would be better served by not wasting time and resources arguing to this Court that it should

affirm a potentially unjust decision. Indeed, it is surprising and disappointing that the Commissioner would argue that a truly disabled person under the Social Security Act should be denied her legally entitled benefits on the basis of such a technicality.

The Commissioner further contends that limiting a claimant to "simple, routine, repetitive" tasks tells us absolutely nothing about that claimant's reasoning capacity. While it is undoubtedly true that some persons limited to "simple, routine, repetitive tasks" may have a reasoning capacity greater than Level One, it is also true that many do not. Issues such as cognitive limitations, severe depression, memory disorders, and the secondary effects of severe pain may both limit claimants to simple tasks and to comprehending only simple instructions. Since these two factors have considerable overlap, it is necessary for the ALJ to identify the apparent conflict where the claimant is limited to simple, routine and repetitive tasks and the Vocational Expert offers positions Level Two or higher. The Vocational Expert must address whether the claimant has the capacity to perform jobs at that reasoning level.

This is not the first time where this issue has arisen in the Fourth Circuit or in the District of South Carolina. The majority view is that SSR 00-04p mandates that the ALJ identify the conflict and have the Vocational Expert address the issue. *See, Keller v. Berryhill*, 2018 WL 6264813 (4th Cir. 2018); *Henderson v. Colvin*, 643 Fed. Appx. 273, 276-78 (4th Cir. 2016); *Mathis v. Berryhill*, No. CV 6:17-2242-TLW-KFM, 2018 WL 7099004 (D.S.C. Nov. 28, 2018), *report and recommendation adopted*, No. 6:17-CV-02242-TLW, 2019 WL 283643 (D.S.C. Jan. 22, 2019). Consequently, this matter must be reversed and remanded to the agency to comply with the requirements of SSR 00-04p.

2. There is not substantial evidence to support the RFC of the ALJ that Plaintiff requires the use of a cane only on an "occasional basis."

Plaintiff's RFC provides that she can "occasionally" balance with a cane. Tr. 18. The ALJ fails, however, to provide any explanation for this determination or identify in the record evidence to support this limited use of a cane. Plaintiff testified at the administrative hearing of January 30, 2017, that she had required the use of two canes for the prior several months and regularly used a single cane before then whenever she left the house. Tr. 44-45, 47. She also testified that she attempted to return to work as a school cafeteria worker and was not allowed to use a cane. She stated that she did not last a week. Tr. 49.

The administrative record is replete with references to Plaintiff's use of a cane. Dr. Randall Meredith, her treating orthopaedist, documented in an office visit on January 15, 2013 that Plaintiff was using a cane and had an antalgic gait. Tr. 329. A counselor noted in a session on March 13, 2013, that Plaintiff "walks with cane." Tr. 338. In another counseling session of May 22, 2013, Plaintiff noted that she was unable to continue walking her dog because he "wraps his leash around her cane." Tr. 334. Dr. Vasant Garde, who conducted a consulting examination for the Social Security Administration of Plaintiff, noted that she used a cane "at times," but did not specify the frequency of cane use or the circumstances under which the cane was required. Tr. 369.

Based on this record, there is not substantial evidence to support the finding the Plaintiff requires the use of a cane only occasionally. Indeed, the record supports the opposite conclusion when she is outside her home. This provides another, independent basis for reversal of the decision of the Commissioner. On remand, the ALJ is instructed to make a determination

regarding the frequency in which Plaintiff requires a cane when outside her home and to include that limitation in a hypothetical question to the Vocational Expert. If her cane use approaches the level of use described at her administrative hearing, it is hard to imagine it would not erode to some degree her occupational base.

3. <u>The ALJ failed to consider the combined effects of Plaintiff's multiple severe mental and physical impairments.</u>

The Fourth Circuit has held that "it is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling but whose total effect, taken together, is to render the claimant unable to engage in substantial gainful employment. *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). Thus, "in evaluating the effect of various impairments upon the disability benefit claimant, the [Commissioner] must consider the combined effect of the claimant's impairments and not fragmentize them." *Id.* at 50.

Plaintiff's mental and physical impairments are closely intertwined. The ALJ analyzed Plaintiff's various impairments separately and never discussed at Step Four the combined effect on Plaintiff's ability to sustain work. According to Plaintiff's administrative hearing testimony, increased pain aggravates her depression, interferes with her ability to concentrate, and heightens her anxiety, particularly her fear of falling and causing worse injury to her painful right knee. Tr. 52, 54.

The decision of the Commissioner is reversed due to the failure of the ALJ to address the combined effects of Plaintiff's multiple mental and physical impairments. On remand, the ALJ is instructed to consider these combined effects and not to assess each impairment in isolation.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the agency for further action consistent with this order.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

February 19, 2019
Charleston, South Carolina